1  Gary S. Deschenes (ID #2293)
   DESCHENES & ASSOCIATES LAW OFFICES
2  309 First Avenue North
   P.O. Box 3466
3  Great Falls MT 59403-3466
   E-mail:  gsd@dalawmt.com
4  Telephone (406) 761-6112
   Facsimile (406) 761-6784
5  Attorney for Debtor

6

7              IN THE UNITED STATES BANKRUPTCY COURT
                  FOR THE DISTRICT OF MONTANA
8

IN RE                                    )
9                                        ) No. 11-62288
   BENJAMIN L. BROWN, SR.                )
10                                       ) (Chapter 11)
                    Debtor.              )
11

12

               MOTION FOR EXPEDITED SALE OF
13      PROPERTY, FREE AND CLEAR OF LIENS; AND NOTICE

14

15         COMES NOW, the Debtor-in-Possession, Benjamin L. Brown, Sr., by and through his

16  counsel of record, Gary S. Deschenes, and hereby moves the Court for an expedited order

17  allowing Debtor-in-Possession to sell property free and clear of liens.  In support of this Motion,

18  Debtor informs the Court as follows:

19         1.      Debtor-in-Possession received a buy/sell offer for $400,000.00 from Shauna

20  Zimmerman to purchase commercial property located at 1416 Main Street and 1416½ Main

21  Street, Billings, Yellowstone County, Montana.  A copy of the Commercial Real Estate Purchase

22  and Sale Agreement is attached hereto as Exhibit "A" and incorporated herein.  A sale could

23  close by July 31, 2014, if there is timely court approval.

24         2.      After costs of sale, the balance remaining will be paid to Yellowstone County

25  property taxes and First Interstate Bank whose debt is in the approximate amount of

26  $510,000.00.

27

28

1    3.      If the sale is not timely approved, Debtor-in-Possession's estate may suffer

2    irreparable harm.  If the sale is approved, the existing secured creditor will not be harmed.  All

3    other creditors will benefit as well.

4    4.      In the event an objection is filed, the Debtor requests that the Court schedule a

5    hearing on July 30, 2014, relative to his Motion for Expedited Sale of Property, Free and Clear

6    of Liens, with regard to the sale of the real property set out in the Commercial Real Estate

7    Purchase and Sale Agreement.

8    5.      Pursuant to F.R.B.P. 6004(h), Debtor also requests that the Order authorizing the

9    sale of the property be effective immediately and not stayed for fourteen (14) days.

10    DATED this 25th day of June, 2014.

11                                                DESCHENES & ASSOCIATES LAW OFFICES

12

13    BY:/s/ Gary S. Deschenes
                                                      Gary S. Deschenes
                                                      Attorney for Debtor

14

**NOTICE OF OPPORTUNITY TO RESPOND
AND REQUEST A HEARING**

15

16    **If you object to the motion, you must file a written responsive pleading and request
a hearing by July 1, 2014.  The responding party shall schedule the hearing on the motion
17    at least twenty-one (21) days after the date of the response and request for hearing and
shall include in the caption of the responsive pleading in bold and conspicuous print the
18    date, time and location of the hearing by inserting in the caption the following:**

19                                **NOTICE OF HEARING
                                Date: _____
20                                Time:_____
                                Location:_____**

21

22    **If no objections are timely filed, the Court may grant the relief requested as a
failure to respond by any entity shall be deemed an admission that the relief requested
should be granted.**

23

24    DATED this 25th day of June, 2014.

25                                                DESCHENES & ASSOCIATES LAW OFFICES

26    BY:/s/ Gary S. Deschenes
                                                      Gary S.  Deschenes
                                                      Attorneys for Debtor

27

28                                                2

1

## CERTIFICATE OF SERVICE

2

I, the undersigned, do hereby certify under penalty of perjury that on June 25, 2014, or as soon as possible thereafter, copies of the foregoing MOTION FOR EXPEDITED SALE OF PROPERTY, FREE AND CLEAR OF LIENS; AND NOTICE was served electronically by the Court's ECF notice to all persons/entities requesting special notice or otherwise entitled to the same and that in addition service by mailing a true and correct copy, first class mail, postage prepaid, was made to the following persons/entities who are not ECF registered users:

3

4

5

See attached mailing matrix.

6

DATED this 25th day of June, 2014.

7

/s/ Lisa Peck
Lisa Peck

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# COMMERCIAL REAL ESTATE PURCHASE
# AND SALE AGREEMENT

This Commercial Real Estate Purchase and Sale Agreement ("Agreement") is made by and between _____ Ben Brown Sr. _____ , a(n) _____ ("Seller") and _____ Shauna Zimmerman _____ , a(n) _____ ("Buyer"). The Agreement Date shall be the date of execution of this Agreement by the party last executing the Agreement.

## ARTICLE 1:       DEFINED TERMS

1.01    _____ Ben Brown Sr. _____ is the owner of record and Seller of certain real property described below.

1.02    _____ Shauna Zimmerman _____ is the Buyer.

1.03    The Property is certain real estate which is commonly known as _____ 1416 Main Street / 1416 1/2 Main Street _____ Billings Montana 59105 _____ , consisting of _____ No _____ (improvements) and having tax identification number(s) of _____ A02561 _____ . The legal description of the Property is [or shall be] attached hereto as **Exhibit A**.

1.04    The Purchase Price is $ 400,000 _____ consisting of:

(a)    _____ $1,000 _____ which shall be deposited with (not known at this time) ("Escrowee") within _____ 20 _____ business days of the Agreement Date ("Initial Earnest Deposit"); and

(b)    _____ $0.00 _____ which shall also be deposited with Escrowee within _____ 0 _____ days of _____ ("Supplemental Earnest Deposit"); and

(c)    [Balance of purchase price] to be paid by Buyer to Seller at closing by certified check, cashier's check, or wire transfer, plus or minus prorations and credits (if any) as described below.

1.05    (a)    _____ N/A _____ is Seller's Broker and/or designated agent.

(b)    _____ N/A _____ is Buyer's Broker and/or designated agent.

1.06    Due Diligence period shall be the period commencing upon the Agreement Date and extending for _____ 31 _____ days thereafter, unless extended by a writing executed by both Seller and Buyer, or shortened by a writing executed by Buyer.

1.07    Address of the parties for notice:

(a)    Seller: _____ Ben Brown Sr. _____        (b)    Buyer: _____ Shauna Zimmerman _____

_____ 350 Hukilike St _____                     _____ 1416 Main Street _____

_____ Kahului HI 96732 _____                    _____ Billings MT 59105 _____

with a copy to:                                       with a copy to:

_____ Gary Deschnes _____                        _____ Nathan H. Haney _____
Seller's Attorney                                     Buyer's Attorney
104 Fourth Ave. South North                          175 North 27th #1303

_____ Great Falls MT 59403 _____                 _____ Billings MT 59105 _____

1.08    Buyer's intended use of the Property is _____ Pawn Shop Business _____ ("Intended Use").

**EXHIBIT**

**A**

1.09    List of Exhibits

    Exhibit A        Legal Description
    Exhibit B        List of Personal Property


    Exhibit G        Estoppel Certificate

## ARTICLE 2:        AGREEMENT TO CONVEY

2.01    In consideration for payment of the Purchase Price by Buyer to Seller, Seller agrees to convey:

    (a)     Legal title to the Property to Buyer, by [Warranty, Special Warranty, or Trustee's] Deed; and

    (b)     Legal title to the personal property (if any) listed on **Exhibit B** by Bill of Sale.

2.02    Title Commitment Review:   Within 14 days after the Agreement Date, Seller shall provide Buyer with a current title commitment in a preliminary amount of $10,000, covering title to the real estate described on **Exhibit A**.  Unless Buyer and/or Buyer's counsel objects to encumbrances shown in the title commitment (other than the Permitted Exceptions described below) within 15 days after receipt from Seller, than all objections thereto shall conclusively presumed to be waived by Buyer. During the 30-day period, Buyer may, by written notice to Seller, cancel this agreement in the event Buyer finds any conditions of title reflected in such title commitment which are objectionable to Buyer in Buyer's sole and absolute discretion ("Unacceptable Exceptions") provided, however, that Seller shall first be given the opportunity to remove or insure over the Unacceptable Exceptions.  If Seller is unable to remove or insure over the Unacceptable Exceptions within 15 business days of Buyer's notice, then Buyer may terminate this Agreement.  Title to the Property shall be deemed acceptable to Buyer if it is subject only to the following exceptions, if any ("Permitted Exceptions"):

    (a)     Conditions, Covenants, and Restrictions of Record, provided same do not prohibit use of the property for Buyer's Intended Use;

    (b)     Easements of record for the benefit of private parties and the public, for the following uses:  utilities, drainage, and roads and highways, provided same do not prohibit use of the property for Buyer's Intended Use;

    (c)     Party wall rights and agreements;

    (d)     Existing leases and tenancies (if any) as listed on **Exhibit C**, which leases shall be assigned by Seller to Buyer and assumed by Buyer at closing of the sale of the Property,

    (e)     Special taxes or assessments for improvements not yet completed and for improvements already completed;

    (f)     Mortgage(s) of Seller (if any) to be assumed by Buyer as listed on **Exhibit D** and mortgage(s) of Buyer; and

    (g)     General taxes for the year __2014__ and subsequent years.

2.03    Seller shall provide to Buyer at closing an Affidavit of Title covering the date of closing, subject  only  to  the  Permitted Exceptions listed in Section 2.02, and any un-permitted exceptions over which the Title Insurer commits to extend title insurance.  In the event that title to the Property is to be conveyed by Trustee's Deed, the Affidavit of Title shall be executed by the beneficiary or beneficiaries of the Trust.

## ARTICLE 3:        SURVEY

3.01    Seller, at its expense, shall furnish to Buyer within thirty (30) days of the Agreement Date a staked survey of the Property. Such survey shall show the location and course of all visible and recorded easements and rights-of way, access to public rights-of-way, the location of the building and improvements on the subject property (including fences) to be within the lot lines and not encroaching over any setback line or easement, and no encroachments of buildings or other improvements from adjoining properties. If requested, the Seller shall provide an affidavit verifying that no changes in improvements have been made since the date of said survey. If said survey shows improper location of improvements or encroachments and Seller is unable to obtain title insurance protection for the benefit of Buyer and Buyer's mortgage lender, if any, against any loss resulting from such improper location or encroachment, Buyer may, at Buyer's option, declare this Agreement to be null and void.

**ARTICLE 4:       REPRESENTATIONS AND WARRANTIES OF SELLER**

4.01    Seller:

Seller hereby represents, warrants, and covenants to Buyer, that, as of the execution of this Agreement:

(a)      The Schedule of Leases set forth in **Exhibit C** attached hereto and made a part hereof sets forth each of the leases for the Property, the name of each tenant, the expiration date of each lease, the current rental, the current status of rental collections, the amount of security deposit, and any special provisions (including without limitation options to renew, extend the term or to purchase the Property).

(b)      All of the leases set forth in **Exhibit C** are in full force and effect and there are no defaults there under, except as listed on **Exhibit C-1.**

(c)      No lease contains any option to renew or extend the term thereof or to purchase or acquire any interest in the Property, except as noted in **Exhibit C**. No options, warrants, rights, or agreements to purchase, participate in, or acquire all or any portion of the Premises are outstanding.  To the best of Seller's actual knowledge, none of the leases contain provisions, whether oral or written, for rent allowance, concessions, or abatements or decorating or other allowance.

(d)      The _____ real estate taxes for the Property were $_____ and Seller has not received any notice of any increase in the assessed valuation of the Premises over the assessed valuation, except as attached as **Exhibit E.**  If, between the date hereof and the date of Closing, Seller receives notice of any increase in the assessed valuation, Seller will promptly notify Buyer of same.

(e)      There are no written or oral contracts or commitments relating to the Property including without limitation for management, performance of service, employment, or purchase or lease of equipment ("Contracts") relating to the Property with respect to any agent, employee or third party, which are not terminable at the will of the Seller on not more than thirty (30) days' notice and without penalty, except as listed on **Exhibit F.**

(f)      To the best of Seller's knowledge, there are no lawsuits threatened or pending involving all or any portion of the Property and no notice has been received by Seller of any condemnation proceedings or any building, zoning, environmental, fire or health code violations which are threatened or pending.  If between the date hereof and the date of Closing, any notice of code violations is received or any lawsuits are initiated with respect to the Property, Seller will promptly notify Buyer of same, and with respect to code violations, will correct same prior to closing.

(g)      Seller has good and marketable title to all of said items of personal property free and clear of all liens, claims, and encumbrances.

(h)      The execution of this Agreement is not in violation of or prohibited by any contract, agreement, or other obligation to which Seller is bound, and the party executing this Agreement for Seller warrants his/her authority to bind Seller.

(i)      All of the documents delivered to the Purchaser pursuant to this Contract are true and correct.

The representations and warranties made by Seller herein above shall be remade at Closing, and shall survive closing for a period of one year from the date of closing.

Seller further covenants and agrees to Buyer that between the date hereof and the Closing Date:

(j)      Seller shall use its best efforts to lease any vacant space at rents not less than 100% of the current rental rates and upon terms consistent with those now in effect for a term not to exceed ___5 years___ subject to approval by Buyer. Seller shall not enter into any new undertakings or agreements relating to the management, financing or maintenance of the Property which extend beyond the Closing Date or prepay for a period of more than one (1) month any sums payable under any Contracts, without prior written notice to and approval of Purchaser.

(k)      Seller shall continue to operate and maintain the Property in first class condition in the same manner the Seller has previously done during its ownership of the Property which includes making necessary repairs at Seller's cost between the date hereof and Closing, and complying with the provisions of all leases and Contracts to which it is a party.

(l)      Seller shall keep Property adequately insured by financially sound and reputable insurers against loss or damage by fire with extended coverage endorsements and maintain reasonable adequate liability insurance covering liability for personal injury or property damage to the extent and in the manner customary for Property of its character.

3

(m)      Seller shall duly pay and discharge, or cause to be paid or discharged, or shall provide a credit to Buyer at closing for all taxes, assessments, and other governmental charges imposed upon the Property, as well as all claims for labor, materials, or supplies which have been incurred prior to Closing the final date for payment of which will occur prior to Closing, and which if unpaid, might by law become a lien or charge upon the Property.

(n)      To the best of Seller's knowledge, no Hazardous Materials (as defined below) have been used, placed, manufactured, stored, handled, generated, released or disposed of on, under, at or from the Property or any part thereof or from any property located within 300 feet of any boundary line of the Property, and which could be detrimental to the Property, or which is in violation of any applicable law or regulation.  For purpose hereof, "Hazardous Materials" means any hazardous, toxic, or dangerous substance, material, waste, gas or particulate matter which is defined as such for purposes of regulation by any local government authority, the State of Illinois, or the United States Government, including, but not limited to, any material or substance which is (i) defined as a "hazardous waste," "hazardous material," "hazardous substance," "extremely hazardous waste." or "restricted hazardous waste" under any provision of Illinois law, (ii) petroleum, (iii) asbestos, (iv) polychlorinated biphenyl, (v) radioactive material, (vi) designated as a "hazardous substance" pursuant to Section 311 of the Clean Water Act, 33 U.S.C. Sec. 1251 et seq. (33 U.S.C. Sec.1317), (vii) defined as a "hazardous waste" pursuant to Section 1004 of the Resource Conservation and Recovery Act, 42 U.S.C. Sec. 6901 et. seq. (42 U.S.C. Sec. 6903), or (viii) defined as a "hazardous substance" pursuant to Section 101 of the Comprehensive Environmental Response, Compensation, and Liability Act, 42 U.S.C. Sec. 9601 et. seq. (42 U.S.C. Sec 9601).

4.02   Buyer:

Buyer hereby represents, warrants, and covenants to Seller that it:

(a)      Has the authority to execute this Agreement and bind Buyer;

(b)      Shall make best efforts to perform any and all inspections or other tasks of its due diligence in a timely manner; and

(c)      Shall make best efforts to obtain mortgage financing in accordance with the terms, conditions, and time periods described herein.

## ARTICLE 5:      TITLE INSURANCE

Seller shall provide to Buyer at closing, at Seller's expense, an Owners Title Policy as described above with the following endorsements: [Extended coverage, zoning, contiguity, EPA].  Seller and Buyer shall share equally the costs for any deed and money escrow, Gap Coverage, and/or New York Style Closing.   Seller shall pay all required State and County transfer taxes, and _____Seller_____ shall pay any Municipal Transfer Tax.  Buyer shall pay all expense related to its mortgage lender including without limitation the cost of any loan policy or policies and endorsements thereto, or lender's escrow required by Buyer's lender(s).

## ARTICLE 6:      MORTGAGE

This Agreement is subject to the condition that Buyer be able to procure within __30__ days of the Agreement Date a firm commitment for a loan to be secured by a mortgage or trust deed on the property in the amount of $ 400,000_____, or such lesser sum as Buyer accepts, with interest not to exceed _____6% a year to be amortized over _____5_____ years, the commission and service charges for such loan not to exceed _____6 %.  If, after making every reasonable effort, Buyer is unable to procure such commitment within the time specified herein and so notifies Seller thereof within __30__ days of the Agreement Date, this Agreement shall become null and void and all earnest money shall be returned to Buyer; provided that if Seller, at its option, within a like period of time following Buyer's notice, procures for the Buyer such a commitment or notifies Buyer that Seller will accept a purchase money mortgage upon the same terms, this Agreement shall remain in full force and effect.

## ARTICLE 7:      INSPECTION

From the Agreement Date and continuing for a period of _____thirty___ ( 30 ) days from receipt of the documents described below ("Inspection Period"), Buyer, its employees and agents, shall have the right to inspect:

(a)      The Property, including the right to make such physical investigations and studies of the structural and mechanical aspects of the Property as Buyer shall deem necessary , provided that Buyer shall hold Seller harmless from any claims or liabilities based upon accidents, injuries or damages sustained by virtue of Buyer's inspection pursuant to this paragraph;

(b)      The leases relating to the property;

(c)      All Contracts of the property;

(d)      All notices of changes in assessed valuation relating to the property for the current or subsequent tax year, if any, in possession of the Seller, and the current real estate tax bill(s) covering the property;

4

(e)     All statements and invoices for the past year covering all utilities (electricity, gas and water) relating to the property;

(f)     All insurance policies insuring the property and the improvements and personal property located thereon which may be assumed by Buyer;

(g)     All books and records, financial data and other papers and matters relating to the operating expenses and income for the current year, and schedules attached to federal income tax returns which relate to the Property and financial statements for the past three (3) years;

Seller agrees to cooperate in all respects to facilitate Buyer's inspection and agrees to promptly make available all documents, books and records necessary to permit the inspections described herein and, to the extent such records are available. If Buyer shall advise Seller at any time prior to the expiration of the Inspection Period that Buyer, in its sole discretion, elects not to proceed with the transaction contemplated hereunder, this Agreement shall thereupon terminate and neither party hereto shall have any further rights against the other, except that all earnest money and interest earned thereon shall be immediately returned to Buyer. In the absence of written notice from Buyer to Seller prior to expiration of the Inspection Period that Buyer has noted any concerns of conditions of the Property which are unacceptable to Buyer, this contingency shall be deemed waived. Buyer shall not suffer or permit any mechanic's lien to attach to the Property, and Buyer shall hold Seller harmless from any and all claims and liabilities based upon accidents or injuries sustained by virtue of Buyer's possession or use of the Property pursuant to any and all inspections of the Property pursuant to this Agreement.

## ARTICLE 8:     ATTORNEY'S APPROVAL

It is further agreed by and between the parties hereto that their respective attorneys shall have ten (10) business days from the date of the Agreement Date to approve or disapprove the terms of this Agreement. In the event a party's attorney disapproves any of the terms hereof, she or he shall, within the said ten (10) business days, serve notice upon the other party, his agent, or attorney, of his disapproval. Said notice shall contain a statement of the specific terms which are not approved and suggested revisions of those terms.

IN THE ABSENCE OF WRITTEN NOTICE WITHIN THE TIME SPECIFIED HEREIN, THIS PROVISION SHALL BE DEEMED WAIVED BY ALL PARTIES HERETO AND THIS AGREEMENT SHALL CONTINUE IN FULL FORCE AND EFFECT.

## ARTICLE 9:     CLOSING

9.01    Closing Date and Place:  The date of closing shall be _____ July 31 2014 _____ or any other date on which Seller and Buyer may otherwise agree in writing at the office of the title Insurer nearest the Property or as the parties may agree provided that title is shown to be good as described above and/or otherwise acceptable to Buyer.

9.02    Seller's Closing Documents:  At or prior to the Closing, Seller shall deliver to Buyer or to Escrowee each of the following if applicable:

(a)     The Title Commitment for an Owner's Policy issued in accordance with Article 2.02, which policy shall be later dated as of the Closing Date;

(b)     A stamped deed with all stamps affixed thereto, with Buyer or Buyer's Nominee indicated as the Grantee;

(c)     An Affidavit of Title executed by the Seller warranting that no outstanding mechanic's lien rights exist and that the property is subject to no leases, liens or other claims or encumbrances of title except those specifically permitted pursuant to this Agreement;

(d)     True and correct copies of all Contracts affecting the Property;

(e)     All original leases relating to the property, duly endorsed for assignment in favor of Buyer or Buyer's Nominee, by a duly authorized agent of Seller, together with an appropriate estoppel certificate(s) in the form of **Exhibit G** from said tenant(s) confirming (i) that said leases are in full force and effect and there exist no defaults there under (or specifying the defaults) as of the Closing Date; and (ii) that the transaction contemplated hereby will not constitute a breach under such leases;

(f)     Current Rent Roll certified to be correct by Seller for the Property;

(g)     Copies of certificates of insurance for each policy of insurance in effect with respect to the Property as of the closing date with appropriate assignments or endorsement (or letters of direction from Seller to the insurers), executed by a duly authorized agent of Seller, if Buyer chooses to assume such insurance policies and they are assumable;

(h)     A Bill of Sale covering the items of personal property being sold to Buyer or Buyer's Nominee, executed by Seller;

5

(i)      All files relating to the tenants of the property, original leases, Contracts, warranties and guaranties regarding the Property in the possession of Seller or Seller's agent;

(j)      A letter from Seller to each tenant of the Property advising, if applicable, the tenant to make payments of rent due from the from and after the closing to Buyer or at Buyer's direction;

(k)      An assignment of all warranties, guaranties and rights under contracts and subcontracts held by Seller with respect to the construction of the improvements on the Property and the installation of all fixtures and equipment thereon, if any, which warranties and rights under contracts are set forth in Exhibit F;

(l)      Keys to all locks on the Property, if available;

(m)      Real Estate Transfer Declarations.

The parties hereto shall also deliver such additional documents and matters as shall be reasonable required to close the transactions contemplated by this Agreement including without limitation, Real Estate Transfer Tax Declarations, copies of paid real estate tax bills, and most recent notices of assessment valuation, if any.

9.03      Buyer's Closing Documents:  At or prior to closing, Buyer shall deliver to Seller or to Escrowee each of the following:

(a)      The purchase price, plus or minus adjustments, credits, and prorations provided for herein;

(b)      Real Estate Transfer Declaration(s);

(c)      Acceptance of assignment of all leases, warranties, guarantees, and rights under Contracts held by Seller as described above;

(d)      All other documents required pursuant to other provisions of this Agreement and the Escrow Agreement to be executed and delivered by Purchaser; and

(e)      Such other instruments and documents as may be reasonably required in order to carry out the purposes of this Agreement.

## ARTICLE 10:      BROKERS

10.01      Seller represents and warrants to Buyer that it has worked with no real estate broker other than _____N/A_____ ("Seller's Broker"), and Buyer represents and warrants to Seller that it has worked with no real estate broker other than _____N/a_____ ("Buyer's Broker"). In the event that Seller's Broker and Buyer's Broker is the same individual licensee, then Seller and Buyer acknowledge that if there is dual agency the disclosure of dual agency has been made and that Seller and Buyer have consented to such dual agency, and that this Agreement shall serve as confirmation of such consent.

10.02      Seller shall pay the sales commission pursuant to separate Agreement between Seller and Seller's Broker [or computed in the amount of _____N/A_____ % of the purchase price to Seller's Broker who shall share this commission with Buyer's Broker pursuant to separate agreement between Seller's Broker and Buyer's Broker [or in the following ratio: _____N/A_____]. Seller's Broker and Buyer's Broker are intended third party beneficiaries of this Agreement. Seller and Buyer agree to indemnify, defend, and hold the other harmless against any and all claims of other real estate brokers if such claims are based on the acts of the indemnifying party.

## ARTICLE 11:      FLOOD PLAIN

If the property is located within a designated flood plain as determined by the flood plain maps of the Department of Housing and Urban Development, Buyer may, at its election obtain flood plain insurance if required by its lender.

## ARTICLE 12:      NOTICES

12.01      Whenever notice is required by the provisions of this Agreement to be given to the parties, it shall be deemed to have been duly given when delivered personally, or within forty-eight (48) hours after deposit in the United States mail, postage pre-paid, registered or certified mail, or by the next business day if sent by express courier service, or by telephone facsimile, to the persons named in Section 1.07 at the addresses shown in such section.

12.02   Fax Transmittal: All notices herein required shall be in writing and shall be served on the parties at the addresses in Section 1.07. The mailing of a notice by registered or certified mail, return receipt requested, shall be sufficient service when the notice is mailed. Notices may also be served by personal delivery, telegram, or by the use of a facsimile machine with proof of transmission and a copy of the notice with proof of transmission being sent by regular mail on the date of transmission.

## ARTICLE 13:   DEFAULT AND REMEDIES

13.01   Time is of the essence of this Agreement. In the event that Buyer should fail to perform this Agreement, then Seller, may, upon written notice to Buyer of its default, (with a copy to Escrowee as defined below), demand that the earnest money be forfeited to Seller, not as a penalty, but as liquidated damages to Seller, and as Seller's sole remedy against Buyer, and this Agreement shall be null and void. In the event that Seller should fail to perform this Agreement, then Buyer may, upon written notice to Seller (with a copy to Escrowee as defined below) of its default, demand that the earnest money be returned to Buyer, but such return shall not release Seller from its obligation under this Agreement, and Buyer shall have all rights and remedies against Seller, at law and or in equity.

13.02   In the event of any default, the party holding the earnest money ("Escrowee") shall give notice to both Seller and Buyer of Escrowee's intended disposition of the earnest money. Seller and Buyer hereby agree that if neither party objects in writing to the Escrowee and to the other party, to the proposed disposition of the earnest money within 30 calendar days of the date of mailing of such notice, then Escrowee shall dispose of its earnest money as previously indicated in such earlier demand or notice. If either Seller or Buyer objects to the Escrowee's intended disposition of the earnest money within the aforementioned 30 day period, then all parties hereto agree that Escrowee may either (a) continue to hold the earnest money until directed otherwise either by:  (1) a joint written direction of Seller and Buyer; or (ii) a court order which is either not subject to or no longer subject to appeal, or (b) deposit by interpleader the earnest money with the Clerk of the Circuit Court for the County in which the Property is located. Seller and Buyer agree that Escrowee may be reimbursed from the earnest money for all its costs including reasonable attorney fees related to the filing of the interpleader; and Seller and Buyer agree to indemnify and hold Escrowee harmless from any and all claims and demands including the payment of attorney fees, costs, and expenses arising out of any default claim or demands.

## ARTICLE 14:   DAMAGE AND DESTRUCTION

14.01   The provisions of the Uniform Vendor and Purchaser Risk Act of the State of Illinois shall be applicable to this Agreement.

14.02   If, prior to Closing, the improvements on the Property shall be destroyed or materially damaged by fire or other casualty, this Agreement shall, at the option of Buyer or Seller, exercised by written notice to the other within five (5) business days after such destruction or damage, be null and void and all monies deposited by Buyer shall be refunded to Buyer. If neither party elects to terminate this Agreement, then Seller shall commence restoration and repair of the property to the original condition within one hundred eighty (180) day period.

## ARTICLE 15:   EMINENT DOMAIN

In the event of any threatened, contemplated, commenced or consummated proceedings in eminent domain (written notice of which shall be given by Seller to Buyer immediately) respecting the property, Buyer may, at its option, by written notice to Seller given within five (5) days after Buyer is notified of such actual or possible proceedings (but prior to Closing), (i) unilaterally terminate this Agreement or (ii) accept the Property subject to such proceedings; in which event Seller shall at the closing assign to Buyer its entire right, title and interest in and to any condemnation award.

## ARTICLE 16:   ATTORNEY'S FEES

In the event that either party should commence litigation to enforce the terms of this Agreement, including without termination forfeiture, specific performance, or any claim for damages caused by the default of a party, and/or in defending any proceeding to which Buyer or Seller is made a party to any legal proceeding as a result of the acts or omissions of the other party, the prevailing party shall be entitled to its reasonable costs and attorney's fees from the non-prevailing party.

## ARTICLE 17:   TAX DEFERRED EXCHANGE

Buyer and Seller agree to cooperate with respect to exercising all appropriate document to allow Buyer or Seller or both to complete a like-kind exchange of real estate as provided under Section 1031 of the U.S. Internal Revenue Code. The additional costs relating to the Exchange shall be paid by the party seeking to complete the Exchange(s). It is understood that the closing shall not be delayed because of the Exchange(s).

## ARTICLE 18:   APPLICABLE LAW

This Agreement shall be governed by and construed in accordance with the laws of the State

7

This Agreement is contingent upon _____ Subject to approval at the bankruptcy Court. _____

_____ Release Date: _____

This Agreement is contingent upon _____ eller to pay all Closing costs. _____

_____ Release Date: _____

IN WITNESS WHEREOF, Buyer and Seller have executed this Agreement as of the day and year stated below.

BUYER:

By: _____
Name: Shauna Zimmerman
Its: _____
Date: 6/23/2014

SELLER:

_____

By: _____
Name: _____
Its: _____
Date: _____

8

## EXHIBIT A

Legal Description of Real Estate commonly known as ___Arrowhead Sub, s22,To1n,R26e, block 3,lot4 n55 5ft lt4___, which is the subject of Commercial Real Estate Purchase and Sale Agreement between _____ Ben Brown Sr. _____, Seller, and _____ Shauna Zimmerman _____ Buyer.

[to be inserted]

## EXHIBIT B

List of personal property to be conveyed by Seller, to Buyer pursuant to Commercial Real Estate Purchase and Sale Agreement.

[to be inserted]

All existing permanently installed fixtures and fittings that are attached to the Property are included in the purchase price, such as electrical, plumbing and heating fixtures, wood, pellet, or gas stoves, built-in appliances, screens, storm doors, storm windows, curtain rods and hardware, attached floor coverings, T.V. antennas, satellite dish, hot tub, air cooler or conditioner, garage door openers and controls, fireplace inserts, mailbox, storage sheds, trees and shrubs and perennials attached to the Property, attached buildings or structures, unless otherwise noted below:

## ESTOPPEL CERTIFICATE

This TENANT'S ESTOPPEL CERTIFICATE ("Certificate") is given by Tenant, with respect to that certain Lease Agreement dated ___January 1,2011___ ("Lease"), under which Tenant has leased from __Ben Brown Sr__ ("Seller") certain premises known as __National Pawn Inc.__ ("Premises") in the ("Property").

In consideration of the mutual covenants and agreements stated in the Lease, and intending that this Certificate may be relied upon by Seller and Buyer and any prospective purchasor or present or prospective mortgagee, deed of trust beneficiary or ground lessor of all or a portion of the Building, Tenant certifies as follows:

1. Except for those terms expressly defined in this Certificate, all initially capitalized terms will have the meanings stated for such terms in the Lease.

2. Seller first delivered possession of the Premises to Tenant (either for occupancy by Tenant or for the commencement of construction by Tenant) on ___January 1___, 2011.

3. Tenant moved into the Premises (or otherwise first occupied the Premises for Tenant's business purposes) on ___January 1___, 2011.

4. The Commencement Date occurred on ___January 1___, 2011, and the Expiration Date of the Lease will occur on ___January 1___, 2022.

5. Tenant's obligation to make monthly payments of Base Rent under the Lease began (or will begin) on ___April 1___, 2011.

6. Tenant's Security Deposit is _____$3000.00_____.

7. There are no uncured defaults by Seller under the terms of the Lease except _____N/A_____.

8. Rent and operating expenses are paid through June 31,2014 _____.

9. The Lease contains the following option(s) to renew, expand the leased premises, and/or purchase the Property, if any: _____Renew_____.

Executed this __23__ day of ___June___, 20__14__.

Tenant: _X. Shauna Zimmerman_
By: _____
Name: _Shauna Zimmerman_
Title: _President National Pawn Inc._

First Hawaiian Bank
Consumer Service Center
PO Box 29450
Honolulu, HI  96820-1850

Maui County Real Property Tax
70 E Kaahumanu Ave, Ste A16
Kahului, HI  96732

Silver Bow County Treasurer
155 West Granite
Butte, MT  59701

Alice Lee
Box 1606
Kahului, HI  96733

American Express
3000 Corporate Exchange,
5th Floor
Columbus, OH  43231

Dr. James Hansen
535 Puunene Ave, Ste 127
Kahului, HI  96732

First Interstate Bank
PO Box 30918
Billings, MT  59116-0918

Gregory & Sherry Stokes
3004 6th Avenue South
Great Falls, MT  59405

Internal Revenue Service
PO Box 7346
Philadelphia, PA  19101-7346

Montana Department of Revenue
Attn: Kim Davis
PO Box 7701
Helena, MT  59604-7701

Patten Peterman Bekkedahl Green
2817 2nd Avenue North, Ste 300
Billings, MT  59101

Rachel Chrisoferson
PO Box 7
Shepherd, MT  59079

Wells Fargo Bank
1000 W Washington Bank
Phoenix, AZ  85003

Wells Fargo Mastercard
PO Box 30086
Los Angeles, CA  90030-0086

Wells Fargo Visa
PO Box 30086
Los Angeles, CA  90030-0086

Altana Credit Union
3212 Central Ave
Billings, MT  59102

Cascade County Treasurer
PO Box 2549
Great Falls, MT  59403-2549

Dawson County Treasurer
207 West Bell Street
Glendive, MT  59330

First Hawaiian Bank
Consumer Service Center
PO Box 29450
Honolulu, HI  96820-1850

Pacific Guardian Life
Pacific Guardian Tower
1440 Kapiolani Blvd No. 1700
Honolulu, HI  96814

Silverbow County Treasurer
155 West Granite
Butte, MT  59701

State of Hawaii
Department of Taxation
54 S. High St. #208
Wailuku, HI  96793-2198

Sunrise Financial Group
PO Box 1952
Great Falls, MT  59403

Wells Fargo Bank
PO Box 31557
Billings, MT  59107-9900

Wells Fargo Home Mortgage
PO Box 10335
Des Moines, IA  50306-0335

Yellowstone County Treasurer
PO Box 35010
Billings, MT  59107-5010